Willie J. HIGHTOWER, Plaintiff,

v.

The UNITED STATES of America, et al., Defendants.

No. 01 CIV. 3472(CM).

United States District Court, S.D. New York.

April 26, 2002.

James E. Monroe, Goshen, NY, for Plaintiff.

Andrew O'Toole, Assistant United States Attorney, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

MCMAHON, District Judge.

In this action, Willie Hightower ("Hightower"), a federal employee with the Department of Veterans Affairs ("VA"), seeks money damages from the United States, and the three individual defendants, based on alleged injuries sustained from mace or pepper spray used against him in the course of his arrest on April 26, 1999. He was arrested after he was stopped on the Montrose VA Hospital campus for driving his automobile in a reckless manner.

As a federal employee, plaintiff applied for and received benefits under the Federal Employee's Compensation Act, 5 U.S.C. § 8101, *et. seq,* ("FECA" ') for the injuries he sustained as a result of the April 26, 1999 incident. In order to obtain those benefits, Hightower affirmatively represented to the Secretary of Labor that they had been sustained in the course of duty. Notwithstanding plaintiff's recovery under FECA, he now seeks to collect additional monies from the United States and/or the individual defendants under state law tort (malicious prosecution, slander, libel and intentional infliction of emotional distress) pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680 ("FTCA").

He also asserts constitutional claims (excessive force, and false arrest) presumably under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens* ").

Defendants argue that because the allegations of the complaint expressly allege that the individual defendants were acting within the scope of their federal employment at all times relevant to the complaint, any state law tort claims for malicious prosecution, slander, libel or intentional infliction of emotional distress against them must be dismissed as a matter of law, since the FTCA expressly immunizes them from such claims. *See* 28 U.S.C. § 2679(b). They further argue that plaintiff cannot recover against the United States under the FTCA because he has already successfully received benefits on his FECA claim. *See* 5 U.S.C. § 8116(c). Their final argument is that even if this Court had jurisdiction to hear plaintiff's state law tort claims against the United States under the FTCA, the FTCA does not waive the United States' sovereign immunity for claims of slander and libel. *See* 28 U.S.C. § 2680(h). Defendants argue that the Court therefore is without subject matter jurisdiction over plaintiff's state law tort claims (reflected in the Second, Fifth, Sixth and Seventh Causes of Action), and these claims must be dismissed in their entirety.

Although the complaint indicates that plaintiff's constitutional claims purport to be brought under 42 U.S.C. Section 1983 and/or the New York State Constitution, they are properly construed as *Bivens* claims for violations of the United States Constitution, because the defendants are all federal employees acting under federal law. Defendants argue that to the extent plaintiff's constitutional claims (the First, Third and Fourth Causes of Action) might be construed as asserting a claim for money damages against the United States itself or the individual defendants in their official capacities for excessive force or false arrest in violation of the Fourth Amendment, and maintenance of an official custom or policy that violated plaintiff's constitutional rights, the claims cannot survive this motion, because the United States has not waived its sovereign immunity for such *Bivens* claims. Defendants assert that the comprehensive schemes Congress has established for federal employees, *i.e.*, the FECA and the Civil Service Reform Act ("CSRA"), are the kind of "special factors" that weigh against the recognition of a private constitutional remedy against the individual defendants in their individual capacities for excessive force and false arrest (the First and Third Causes of Action). *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999.

## FACTUAL BACKGROUND [1]

### A. Plaintiff's Arrest and Criminal Trial

At all times relevant to this complaint, plaintiff was (and remains) a federal employee employed at the Montrose VA Hospital Campus. *See* Declaration of Sharon J. Weiner dated January 8, 2002 ("Weiner

---

1. In resolving this motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider evidence outside pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); *City of New York v. FDIC*, 40 F.Supp.2d 153, 160 (S.D.N.Y.1999) (citing *Kamen v. AT & T Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)). Plaintiff errs when he suggests that a motion brought pursuant to Rule 12(b)(1) is governed by the same rules as a motion to dismiss for failure to state a claim under Rule 12(b)(6)—in particular, the rule that precludes consideration of material outside the pleadings in resolving such a motion.

Decl."), ¶ 13, 14. Plaintiff's claims in this action arise from a routine traffic stop on the Montrose VA Hospital Campus on the morning of April 26, 1999. *See* Complaint at ¶ 2; Decision and Order entered Sept. 15, 1999, *USA v. Willie Hightower*, 99 Mag. 1120(MRG) (the "Decision") (Ex. C to Weiner Decl.), at 8. At approximately 7:10 a.m., plaintiff drove his green Volkswagen through the Montrose VA Hospital Campus on his way to his office located in Building No. 8. *See* Decision at 8. After parking and exiting his car, plaintiff alleges he was first approached by Bunce who asked plaintiff if he knew how fast he was going. *See id.* Plaintiff allegedly responded that he did not know his speed because his speedometer was not working. *See id.* When Bunce asked for plaintiff's driving license, plaintiff claims he responded by seeking permission to first go inside his building to "punch in" for work, and then return outside. *See id.*

Thereafter, plaintiff alleges that Bunce called for assistance from Porter and Mackin, and that "one or more of the individual defendants applied excessive force in effecting his arrest by grabbing the plaintiff at his shirt collar, grabbing and/or pulling the plaintiff by his left upper extremity, impeding the plaintiff from ambulating forward, spraying the plaintiff with MACE and/or pepper spray, handcuffing the plaintiff and arresting him." *See* Complaint ¶ 15. Once plaintiff cooperated, he was issued three United States District Court Violation Notices for: (1) Assaulting, Resisting, or Impeding Certain Officers or Employees in Violation of 18 U.S.C. § 111 ("Assaulting, Resisting or Impeding a Federal Officer"); (2) Disorderly Conduct in Violation of 38 C.F.R. § 1.218(b)(11); and (3) Operation of Vehicle in Reckless or Unsafe Manner, in Violation of 38 C.F.R. § 1.218(b)(33) ("Reckless Driving"), *see* Weiner Decl. ¶ 5; United States District Court Violation Notices (Violation Nos. V526079–081) (copies of which are attached as Ex. B to Weiner Decl.).

On June 24, 1999, plaintiff was charged in a three-count misdemeanor complaint filed in this Court charging him with: (1) Assaulting, Resisting or Impeding a Federal Officer (Count One); (2) Disorderly Conduct (Count Two); and (3) Reckless Driving (Count Three). *See* Decision at 1 (Weiner Decl., Ex. C). By an Amended Superceding Complaint filed on July 29, 1999, Counts One and Three were dismissed by operation of law, leaving the single count of disorderly conduct in violation of 38 C.F.R. § 1.218(a)(5) ("Disorderly Conduct") to be tried. *See id.* On August 10, 1999, plaintiff was tried in a bench trial before the Honorable Martin R. Goldberg on a single count of Disorderly Conduct. *See id.* at 2. Plaintiff, Bunce and Mackin testified at trial. *See id.* at 3, 5, and 7. On September 13, 1999, the Court found plaintiff "Not Guilty" of the Charge of Disorderly Conduct, but also concluded that "[i]t's the Court's belief that the Defendant, Willie Hightower, was late for work and was probably annoyed that he was being stopped and questioned by the police and delayed from work and was probably further annoyed that the police were preventing him from signing in, thereby causing him to be tardy or late for work." *See id.* at 13.

## B. Plaintiff's Remedies As a Federal Employee

### 1. FECA Claim

On April 30, 1999, four days after the alleged incident, plaintiff filed a Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation ("FECA Claim") to the Secretary for the United States Department of Labor ("Secretary of Labor") pursuant to

the Federal Employment Compensation Act ("FECA"). *See* Weiner Decl. ¶ 7, FECA Claim (Weiner Decl., Ex. D). In his FECA claim, plaintiff sought and received compensation for the injuries ("lesion in head and vision affected in both eyes") allegedly sustained from pepper spray applied by VA police in the VA parking lot on April 26, 1999 at 7:10 a.m. *See* FECA Claim (Weiner Decl., Ex. D). By filing his FECA Claim, plaintiff certified under penalty of law that his injury "was sustained in performance of duty as an employee of the United States Government". *See id.* On June 30, 1999, the Secretary of Labor conducted a telephone conference with the VA and plaintiff on his FECA Claim to specifically determine whether plaintiff "sustained an injury in the performance of duty." *See* Conference Memorandum, dated July 30, 1999 (Weiner Decl., Ex. E). On December 27, 1999, the Secretary of Labor accepted plaintiff's FECA Claim for all injuries sustained as a result of his April 26, 1999 arrest. *See* Secretary of Labor's letter to plaintiff dated Dec. 27, 1999 (Weiner Decl., Ex. F).

## 2. FTCA Claim

On November 20, 2000, more than a year after plaintiff was notified that his FECA Claim had been accepted by the Secretary of Labor, plaintiff, with the assistance of his current counsel, filed his Claim for Damage, Injury, or Death (Standard Form 95) (the "FTCA Claim") seeking approximately $1,000,000 in damages based on the injuries he allegedly sustained as a result of his arrest by VA police at the Montrose Campus of the VA Hudson Valley Health Care System on April 26, 1999. *See* FTCA Claim (a copy of which is attached to the Complaint and for the Court's convenience may also be found as Ex. G to the Weiner Decl.). In his FTCA Claim, plaintiff alleges that:

The incident giving rise to this claim occurred at the Montrose Veteran's Administration Hospital Montrose, New York at or near Parking Lot "B" and was caused by the unlawful, reckless intentional acts, excessive force, malicious prosecution, assault, battery, false arrest and/or negligent acts of Officer John Bunce and Officer Robert Porter, all in violation of claimant's civil rights and liberties; the Fourth Fifth and Fourteenth Amendments of the United States Constitution; the New York Constitution; the New York State Executive Law Section 296; and 42 U.S.C. Sections 1981, 1983 and 1985.

*See* FTCA Claim (Weiner Decl., Ex. G) at Box No. 8 "Basis of Claim."

Plaintiff claimed that the following injuries were sustained as a result of his April 26, 1999 arrest:

Chemical burn to scalp; scabs and lesions to left side of head/scalp; scar tissue to both eyes; blurred vision in both eyes; need for change of eyeglasses prescription; excessive dryness in both eyes; excessive tearing in both eyes; chemical trauma to eyes and face, resulting in permanent damage and disability to those areas.

*See id.* at No. 10—"Personal injury/Wrongful Death."

On April 4, 2001, plaintiff's FTCA Claim was denied because the Secretary of Labor had already approved his FECA claim based on these same injuries, thereby effectively foreclosing any potential claim against the United States under the FTCA pursuant to 5 U.S.C. § 8116(c). *See* VA's Letter to plaintiff's attorney, dated April 4, 1999 (Exhibit H to the Weiner Decl.). Plaintiff's FTCA Claim was also denied because "[a] review of all the circumstances associated with this case does not reveal any liability for negligence and/or intentional torts on the part of the Depart-

ment of Veterans Affairs or any of its employees." *See* Weiner Decl., Ex. H.

### 3. Plaintiff's Grievance Rights Under the CSRA

As a federal employee, plaintiff may file formal and informal grievances for "any matter of concern or dissatisfaction relating to employment" under Chapter 771, "Employee Grievances and Administrative Appeals" MP–5, Part–1, which sets forth the VA's employee grievance procedures pursuant to the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1111 *et seq.* ("CSRA"). *See* Chapter 771, "Employee Grievances and Administrative Appeals" MP–5, Part–1 (Weiner Decl., Ex. I). There is no evidence in the record from which I could conclude that plaintiff ever filed such a grievance.

### C. The Instant Complaint

On April 23, 2001, Plaintiff filed his seven-count complaint against the United States and the individual defendants seeking more than $5,000,000 in damages based on state law tort claims and constitutional claims. Jurisdiction over this action is alleged under the FTCA, the United States Constitution, Section 1983 and the New York Constitution. Plaintiff's complaint contains four state law tort claims:(a) Second Cause of Action (Malicious Prosecution); (b) Fifth Cause of Action (Libel); (c) Sixth Cause of Action (Libel/Slander); and (d) Seventh Causes of Action (Intentional Infliction of Emotional Distress). *See* Complaint. Plaintiff's complaint also contains three constitutional claims: (a) First Cause of Action (Excessive Force); (b)

Third Cause of Action (False Arrest); and (c) Fourth Cause of Action (Maintenance of an Official Custom or Policy Which Lead to Constitutional Violations). *See id.*

## THE COURT IS WITHOUT SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE LAW TORT CLAIMS

### A. The Court Lacks Subject Matter Jurisdiction to Hear Plaintiff's State Law Tort Claims as Against the United States because Plaintiff Has Already Recovered for These Injuries in his FECA Claim

■ Plaintiff's state law tort claims in this action brought against the United States under the FTCA are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), because the Secretary of Labor has already allowed plaintiff's FECA Claim based on the injuries plaintiff allegedly sustained on April 26, 1999 during the course of his duties.

FECA provides the exclusive remedy against the federal government for work-related injuries sustained by federal employees. 5 U.S.C. § 8116(c); *Votteler v. United States*, 904 F.2d 128, 130 (2d Cir. 1990).[2] *See also Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir.1995). Where FECA applies, federal courts have no jurisdiction to entertain FTCA claims asserted by an injured federal employee:

> FECA ... was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted

**2.** Section 8116(c) provides, in pertinent part: The liability of the United States ... under this subchapter ... with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States ... to the employee, ..., and any

other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action, ... or under a Federal tort liability statute.
5 U.S.C. § 8116(c).

the principal compromise—the "quid pro quo"—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193–94, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). "FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage .... Consequently the courts have no jurisdiction over FTCA claims where the Secretary of Labor determines that FECA applies." *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). *See also Votteler,* 904 F.2d at 130; *Swafford v. United States,* 998 F.2d 837, 839–41 (10th Cir.1993); *McDaniel v. United States,* 970 F.2d 194, 196–98 (6th Cir.1992); *Grijalva v. United States,* 781 F.2d 472, 474 (5th Cir.1986).

Plaintiff alleges that there is an open question of fact concerning whether his injuries were sustained within the course of his federal employment, because he was still in the parking lot, and had not yet formally reported for duty, at the time of his arrest. Plaintiff also claims that: (1) an unnamed supervisor forced him to file his FECA claim on April 30, 1999 by telling him that he would not be able to return to work from his immediate suspension following the incident unless he filed a FECA claim, *see* Pl.'s Decl. ¶ 5; and (2) he has never received any compensation under his FECA claim other than compensation for the time he missed from work as a result of the incident. *See id.*[3]

There is no open question of fact concerning whether plaintiff sustained his injuries during the course of his federal employment. And even if his other contentions are true, they do not confer jurisdiction over plaintiff's claims on this Court.

The Secretary of Labor has the "sole discretion" to decide whether a particular injury is compensable under FECA. *McDaniel,* 970 F.2d at 197–98. "[T]he determination of [FECA] coverage is made by the Secretary of Labor or his designee and his finding is final and not subject to judicial review." *Griffin v. United States,* 703 F.2d 321, 321–22 (8th Cir.1983). Defendants correctly note that when there is a substantial question of FECA coverage, for example, whether an injury occurred while in the performance of duty, district courts will stay their proceedings pending a decision by the Secretary of Labor. *See e.g., McDaniel v. United States,* 970 F.2d 194, 198 (6th Cir.1992). If the Secretary decides that the employee was injured in the performance of his duty, the Secretary's decision is binding on the court, even if no compensation is awarded to the employee. *Id.* In this case, the Secretary of Labor has already decided that plaintiff's injuries occurred during the course of his employment.

The facts of this case are similar to those in *Grijalva v. United States,* 781 F.2d 472 (5th Cir.1986). In that case, a government employee was injured when her car collided with a U.S. Army vehicle that failed to stop at a stop sign. The accident took place on a U.S. Army Military Reservation, and the plaintiff was driving home from work at the time. The employee filed a claim under FECA and

**3.** Although plaintiff claims that Ex. H to the Weiner Decl. illustrates that his "FECA claim was denied in all respects," Pl.'s Br. at 8, Ex. H is actually the denial of plaintiff's FTCA claim, not his FECA claim. The FTCA claim was denied because the FECA claim had already been accepted. *See* Weiner Decl. Ex. H.

was awarded compensation. She then sued the U.S. government in the federal district court under the Tort Claims Act. The plaintiff argued that because she was on her way home when the accident happened, she was not "injured in the performance" of her federal employment. She also argued that her mental capacity was affected by the accident, and therefore her application for compensation under FECA was not an informed and voluntary application for benefits. *Id.* at 474. The court decided that, even viewing the facts as plaintiff alleged them, she could not sustain an action against the government in the district court. The Secretary of Labor had awarded the plaintiff benefits under FECA and that decision could not be collaterally attacked in the district court. *Id.*

Similarly, in this case, if plaintiff wishes to pursue his theory that his injuries are not covered by FECA, he must seek relief from the Secretary of Labor, not the district court. *See, e.g., Grijalva v. United States,* 781 F.2d 472 (5th Cir.1986); *Coffey v. United States,* 939 F.Supp. 185, 190 (E.D.N.Y.1996).

It is immaterial to the jurisdictional question that some of plaintiff's damage claims might go uncompensated because "the only compensation [. . .he has received] pursuant to his FECA claim was for reimbursement for time missed from work during his suspension." Pl.'s Mem. at 8. As set forth above, Section 8116(c) provides the exclusive remedy for federal employees injured within the course of their employment. The mere fact that plaintiff would like to recover benefits besides those he has already recovered or may be entitled to under FECA does not alter the fact that FECA provides his sole and exclusive remedy against the United States. *See Balancio v. United States,* 267 F.2d 135, 138 (2d Cir.1959) ("Congress meant that whenever 'compensation' was available to a Federal employee, [FECA] was to be a his sole remedy"). Accordingly, plaintiff's claims against the United States are barred by his recovery under FECA.

Finally, even if plaintiff's recovery under FECA did not foreclose the Court's jurisdiction over his state law tort claims under the FTCA, the Court would still lack jurisdiction over plaintiff's slander and libel claims against the United States (the Sixth and Seventh Causes of Action). Significantly, the FTCA expressly excludes from its waiver of sovereign immunity "[a]ny claim arising out of . . . libel, slander or misrepresentation." 28 U.S.C. § 2680(h). Courts routinely dismiss claims of defamation and libel improperly brought against the United States. *See, e.g., Prestop v. Hamlett,* No. 99 Civ. 2747(GBD), 2001 WL 363676, at *6 (S.D.N.Y. Apr. 12, 2001) (dismissing defamation claim against the United States); *Saghezi v. Reno,* No. 94 Civ. 8291, 1996 WL 524338, at *6 (S.D.N.Y. Sept. 16, 1996) (same). Thus, Counts Six and Seven must also be dismissed on this alternate ground.

**B. The Court Lacks Subject Matter Jurisdiction to Hear Plaintiff's State Law Tort Claims As Against the Individual Defendants**

■ To the extent the complaint might be construed to also allege state law tort claims against the individual defendants, such counts are dismissed because the FTCA effectively immunizes the individual defendants from liability from such claims.

Section 2679(b)(1) of the FTCA provides that a suit against the United States is the exclusive remedy for a suit for damages for injury "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 2679(b)(1), and provides govern-

ment officers and employees acting within the scope of their employment with absolute immunity from claims of state law torts. *See Rivera v. United States*, 928 F.2d 592, 608–09 (2d Cir.1991). Because the complaint expressly alleges that the individual defendants were each federal employees of the VA, *see* Complaint ¶¶ 6, 8 and 10, acting within "the scope of their employment," Complaint ¶ 35, any state law torts claims based on their conduct would be cognizable, if at all, only as a suit against the United States under the FTCA. However, for the reasons discussed *supra* at Point I.A., plaintiff's recovery under FECA forecloses any additional recovery against the United States under the FTCA.

Alternatively, to the extent these state law tort claims could be considered as against the individual defendants under New York law, they must be dismissed under the relevant statute of limitations. The torts alleged by plaintiff—libel, false arrest, malicious prosecution, intentional infliction of emotional distress—are intentional torts. Under N.Y.C.P.L.R. § 215(c), the statute of limitations governing such torts is one year. By any measure, the latest date any of plaintiff's claims could have accrued was September 15, 1999, the date he was found "not guilty." However, plaintiff did not commence this litigation until April 23, 2001, more than eighteen months later. Therefore, plaintiff's state law tort claims are time barred.

For the foregoing reasons, all of plaintiff's state law tort claims (the Second, Fifth, Sixth and Seventh Causes of Action) are dismissed in their entirety.

---

THE COURT IS WITHOUT SUBJECT MATTER JURISDICTION TO HEAR PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Damage Claims Against the United States For Alleged Constitutional Violations

■ Plaintiff's *Bivens* [4] claims for excessive force, false arrest and maintenance of a custom or practice that resulted in the violation of his constitutional rights (Counts One, Three and Four) as against the United States are also dismissed for lack of subject matter jurisdiction. It is well settled that "the United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (same). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349.

In *Bivens*, the Supreme Court first recognized that claims against federal agents for constitutional violations may be implied directly under the Constitution where otherwise no statute specifically creates such a remedy. *See Bivens*, 403 U.S. at 397, 91 S.Ct. 1999. However, such an action can be brought only against federal agents in their individual capacities. Therefore, to the extent the First, Third and Fourth Causes of Actions can be fairly read to state a *Bivens* claim against the United

---

4. Although plaintiff purports to invoke Section 1983 and the New York Constitution as bases for his constitutional claims, his constitutional claims are properly construed as *Bivens* claims because Section 1983 and the New York State Constitution only permit suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law. *See Robinson*, 21 F.3d at 509.

States and the individual defendants in their official capacities, such claims are barred by sovereign immunity and must be dismissed. *See Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484, 114 S.Ct. 996, 1005, 127 L.Ed.2d 308 (1994); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). Indeed, such constitutional claims against the United States are "routinely dismissed for lack of subject matter jurisdiction." *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.1983).

■ With respect to his Fourth Cause of Action, plaintiff seeks to hold the United States liable for alleged constitutional violations committed by the individual defendants based on the erroneous view that the United States can be held liable for money damages if those violations resulted from an official government custom, policy, practice or usage. While municipalities may be held liable under Section 1983 for maintaining such a custom, policy or practice, *see Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), no similar doctrine applies to the Federal Government. The doctrine of sovereign immunity clearly precludes a *Bivens* action against an officer in his or her official capacity, a federal agency or the United States. *See Meyer,* 510 U.S. at 484–86, 114 S.Ct. 996; *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Robinson,* 21 F.3d at 510.

**B. The Court Lacks Subject Matter Jurisdiction to Entertain Plaintiff's *Bivens* Claims As Against the Individual Defendants In Light of Plaintiff's CSRA And FECA Remedies**

■ By this complaint, plaintiff urges this Court to extend the implied damages remedy first recognized in *Bivens* to the federal employment context, so that he may not only retain what he has recovered under FECA, but also ignore his available remedies under the CSRA, and instead seek money damages from individual federal defendants. Plaintiff's attempt to introduce *Bivens* into the field of federal employment must be denied in light of the Supreme Court's decisions in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to extend *Bivens* claim to a federal employee in light of the comprehensive scheme Congress had established over the field of federal employment), and *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (rejecting *Bivens* claim against private entity acting under color of federal law).

The rights of federal employees have already been adequately protected by Congress through, *inter alia,* the availability of at least two avenues currently available to plaintiff—a FECA claim against the United States for the injuries sustained during the course of his employment (which plaintiff has already collected), and the potential to file a grievance under the CSRA. This comprehensive structure created by Congress in the field of federal employment forecloses the fashioning of a private constitutional remedy, particularly where plaintiff, a federal employee, has already recovered through FECA for the injuries allegedly sustained.

By enacting both the CSRA and FECA within the field of federal employment, Congress has demonstrated a clear intent to foreclose the award of money damages against federal employees for constitutional violations that occur within the course of federal employment. Under FECA, federal employees can and do recover monetary compensation for the injuries they sustain in the course of their employment. For example, plaintiff has already recovered

for the injuries allegedly sustained as result of his arrest on April 26, 1999 by submitting his FECA claim and demonstrating that his injuries were sustained within the course of his employment. *See* Weiner Decl., Ex. F.

In addition to FECA, Congress also established the CSRA as the remedial scheme for the protection of constitutional rights in the field of federal employment *See United States v. Fausto,* 484 U.S. 439, 443, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (CSRA "comprehensively overhauled the civil service system, . . . creating an elaborate new framework for evaluating adverse personnel actions against [federal employees].") Under the CSRA, federal employees, like plaintiff, may file grievances pursuant to Chapter 71 of the CSRA. *See* 5 U.S.C. §§ 7101–35. The term "grievance" is defined as a complaint "by any employee concerning any matter relating to the employment of the employee." 5 U.S.C. § 7103(a)(9)(A). The CSRA provides that the "grievance procedure shall be the exclusive administrative procedure for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). An employee's "employment-related claims alleging constitutional violations are "prohibited personnel actions" within the meaning of the CSRA." *See Black v. Reno,* No. 99 Civ. 2704, 2000 WL 37991, at *8 (S.D.N.Y. Jan. 18, 2000).

The CSRA requires an employee aggrieved by a prohibited personnel practice to complain initially to the Office of Special Counsel ("OSC") of the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. § 1214(a)(1)(A). The OSC is required to investigate any allegation of a prohibited personnel practice, and take any correction action that is needed. *See* §§ 5 U.S.C. §§ 1212, 1214(b)(2)(B). Therefore, the CSRA creates "an integrated scheme of administrative and judicial review, de-signed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto,* 484 U.S. at 445, 108 S.Ct. 668.

In *Bush,* the Supreme Court held that the comprehensiveness of the CSRA's structure constitutes a "special factor" that cautions against the fashioning of a private constitutional remedy in employment disputes involving federal workers. *See Bush,* 462 U.S. at 368, 103 S.Ct. 2404. The Supreme Court, refused to recognize a *Bivens* cause of action for a federal employee who was allegedly demoted for publicly criticizing NASA, in violation of his First Amendment rights. *See* 462 U.S. at 369–72, 103 S.Ct. 2404. In holding that the employee's *Bivens* suit was precluded, the Supreme Court noted "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Id.* at 385, 103 S.Ct. 2404. "Although the plaintiff [in *Bush* ] had no opportunity to fully remedy the constitutional violation, [the Supreme Court] held that the administrative review mechanisms crafted by Congress provided meaningful redress and thereby foreclosed the need to fashion a new, judicially crafted cause of action." *Malesko,* 122 S.Ct. at 520. The Supreme Court expressly recognized that the CSRA reflected Congress' balancing of government efficiency with employee rights, and counseled against the allowance of additional remedies, even if those remedies offered superior employee compensation. *Bush,* 462 U.S. at 388–89, 103 S.Ct. 2404.

In *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court refused to extend a *Bivens* claim to recipients of Social Security dis-

ability benefits who claimed defendants' unconstitutional conduct resulted in the denial of their benefits, causing injury above and beyond the amount lost in benefits alone. While recognizing that such injury had been inflicted, the Supreme Court again held that a *Bivens* claim could not be maintained because Congress had established an administrative system for claim resolution: "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms ... we have not created *Bivens* remedies." *Id.* at 423, 91 S.Ct. 1999.

Significantly, the availability of remedies under the CSRA precludes suit under state law or *Bivens* even when, for whatever reason, the federal employee cannot obtain complete relief under that statute. "Under *Chilicky*, the central question is whether Congress has provided a comprehensive remedial scheme, not whether the remedy applied to the particular injury is meaningful." *Kassel v. United States Veterans' Administration,* 709 F.Supp. 1194, 1207 (D.N.H.1989). Therefore, there is no need to "foray into the meaningfulness of federal employees' remedies under the CSRA.... [E]ven if no remedy at all has been provided by the CSRA, courts will not create a *Bivens* remedy." *Jones v. TVA,* 948 F.2d 258, 264 (6th Cir.1991). Thus, for example in *Lombardi v. Small Business Administration,* 889 F.2d 959 (10th Cir.1989), the court held that the CSRA barred a *Bivens* claim even though the plaintiff was an employee who had no recourse to CSRA remedial measures. *Id.* at 960–61; *see also Saul v. United States,* 928 F.2d 829 (9th Cir.1991) (*Bivens* claim barred by CSRA even though plaintiff had no remedy under the CSRA because the offensive conduct, the unauthorized searching of his mail, was not a proscribed "personnel action").

Plaintiff acknowledges in his memorandum of law that, "Taken together, *Bush* and *Chilicky* stand for the proposition that Courts cannot provide constitutional remedies to supplement a Congressionally-established administrative system even where the system's remedies are not as complete as the constitutional remedy might be." Pl. Mem. at 6–7. Nonetheless, he contends that plaintiff's claims for false arrest and excessive force are not covered by the CSRA, because they occurred before he reported to work. For this proposition he relies on Judge Sweet's decision in *Black v. Reno.* 2000 WL 37991.

*Black* is indeed apposite here, but it supports defendants' position rather than plaintiff's. In *Black,* Judge Sweet held that the CSRA precluded a federal employee's *Bivens* claims arising from the alleged illegal search and seizure of her office, but did not preclude her *Bivens* claims arising from her prior arrest at her home. *See id.,* at *12. He concluded that the arrest claim, while ultimately arising out of Black's workplace activity, was too far removed from those activities to fall within the CSRA scheme. In this case, plaintiff's *Bivens* claims of alleged false arrest and excessive force arise from an incident that occurred on the premises of the VA Hospital where plaintiff worked, after he had arrived at his work site, and while he was attempting to sign in. As stated in Plaintiff's Memorandum of Law opposing the Government's motion, plaintiff was arrested as he was attempting to "punch into work and return to the scene in order to avoid being marked late for work that morning." Pl. Mem. at 9. The incident occurred at 7:10 AM, ten minutes after the scheduled beginning of plaintiff's tour. Weiner Decl. Ex. D; Bell Decl. Ex. A. The fact that plaintiff had not quite made it into the building in which he worked does not render his injury unconnected to his federal employment. But for

his job, plaintiff would not have been on the VA premises at the date and time in question.

In any event, plaintiff has already received benefits under FECA, after submitting a sworn statement to the Secretary of Labor stating that these same injuries were sustained by him in the course of him duties as a federal employee. *See* FECA Claim (Weiner Decl., Exs. D, E and F). The Secretary's determination that plaintiff's injury was incurred in the course of his federal employment is not subject to judicial review. 5 U.S.C. § 8128(b). Plaintiff's constitutional claims against defendants are necessarily preempted by the expansive scope of the remedial scheme established under the CSRA and FECA.

Accordingly, the Court declines plaintiff's invitation in this case to expand the *Bivens* remedy into the area of federal employment. *See Saul*, 928 F.2d at 840 ("In the area of federal employment, Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce.") While plaintiff may prefer a more complete remedy for his alleged constitutional claims, the comprehensive scheme established by Congress in the field of federal employment counsels against recognition of a *Bivens* claim under these circumstances. *See Malesko*, 122 S.Ct. at 520 ("So long as the plaintiff has an avenue of some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.")

## CONCLUSION

For the foregoing reasons, the complaint is dismissed for lack of subject matter jurisdiction. The Clerk of the Court is directed to close the file.