**Gregson JOSEPH, Plaintiff,**

v.

**Michael O. LEAVITT, Secretary of the Department of Health and Human Services (DHHS);[1] Alex Azar, DHHS General Counsel; Lester Crawford, U.S. Food & Drug Administration (FDA), Acting Commissioner; Diana Kolaitis, FDA Northeast Regional Director; Jerome Woyshner, FDA New York District Director; Otto Vitillo, FDA Supervisory Consumer Safety Officer; Theresa Foster, Supervisor of FDA Labor Relations Office; & Edmund Siejka, FDA Labor Relations Specialist, Defendants.**

### No. 04 CIV. 9318(VM).

United States District Court, S.D. New York.

Sept. 6, 2005.

---

1. Michael O. Leavitt is automatically substituted for Tommy Thompson as Secretary of the United States Department of Health and Human Services ("DHHS"), having been sworn in on January 26, 2005. *See* Fed. R.Civ.P. 25(d)(1).

Gregson Joseph, Bronx, NY, pro se.

### *DECISION AND ORDER*

MARRERO, District Judge.

*Pro se* plaintiff Gregson Joseph ("Joseph"), an employee of the United States Food and Drug Administration ("FDA"), filed this action against Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("DHHS"),[2] Dr. Lester Crawford ("Dr.Crawford"), the FDA's Commissioner, and several individual FDA employees (collectively, "Defendants"). The complaint alleges that a memorandum sent to Joseph by his supervisor violated his rights under the First Amendment to the United States Constitution. The complaint also alleges that the memorandum violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Federal Labor Management–Management Relations Statute, 5 U.S.C. § 7101 *et seq.* ("FLMRS"), but Joseph insists that he does not seek to pursue these claims in the instant suit. Defendants have moved to dismiss his First Amendment claim pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3]

For the reasons discussed below, the Court grants Defendants' motion to dismiss on the grounds that Joseph has no legally cognizable cause of action in federal court arising out of the First Amendment injury he alleges. It finds directly controlling the Second Circuit's recent decision in *Dotson v. Griesa*, 398 F.3d 156, 179–80 (2d Cir.2005), which held that the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. 95–454, 92 Stat. 1111 (codified, as amended, in various sections of Title 5, United States Code), deprives federal employees of any federal judicial remedies that were not expressly provided by the CSRA's statutory scheme. Because the CSRA provides Joseph with no federal judicial remedy for the First Amendment violation he complains of, his complaint must be dismissed.

### I. *BACKGROUND*[4]

Joseph has been employed by the FDA since 1989. This action arises from a counseling memorandum sent to Joseph

---

2. The FDA is an agency within DHHS.

3. The Defendants have also sought to dismiss Joseph's complaint based on lack of subject matter and personal jurisdiction. Because the Court concludes that Defendants' Rule 12(b)(6) motion is dispositive, however, it does not reach the additional grounds for dismissal asserted by Defendants.

4. The factual summary derives from the following documents: Complaint, dated Novem-

from his supervisor, Otto Vitillo ("Vitillo"), on October 14, 2004 (the "Counseling Memo"), which Joseph alleges violated his First Amendment rights.

The Counseling Memo was a response to two e-mail communications sent by Joseph to Vitillo, the first of which was sent to Vitillo and copied to Dr. Crawford, who at the time was the Acting Commissioner of the FDA, on August 30, 2004 (the "August e-mail"), and the second of which was sent to Vitillo and copied to certain union representatives on September 13, 2004 (the "September e-mail"). The August e-mail asserted various complaints regarding Joseph's mid-year performance evaluation. Joseph expressed a concern that Vitillo orally made him aware that his "PODs[5] time is low," but that Vitillo did not mark this down on the performance review. Joseph also alleged that Vitillo was manipulating the employee review process in order to retaliate against him for filing lawsuits and other complaints alleging discrimination:

> I am very troubled by the manner in which you conducted the mid-year appraisal of me. I feel that you are not operating in good faith and that you are attempting to create the foundation to unjustly give me a failing final evaluation.
>
> .    .    .    .    .
>
> [Y]ou are also very much aware that I have throughout the year taken several days of annual leave in connection with

my on-going Title VII racial discrimination civil action against the New York District, in which you are one of the discriminating officials.[6] Indeed, because of the discriminatory and retaliatory manner in which you have supervised me, I have had to file another EEO complaint earlier this year, in which you were named as a discriminating official.    .

> .    .    .    .    .
>
> Unfortunately, I feel that you have allowed yourself to be used as an instrument to discriminate and retaliate against me.

(August e-mail, attached as Ex. 2 to Compl., at 1–2.) The e-mail also argued that the allegedly discriminatory treatment of him by his supervisors was consistent with the experiences of other FDA employees who were victims of discrimination.

The September e-mail concerned Joseph's requested time, as Acting President of Chapter 290 of the National Treasury Employees Union ("NTEU"), to attend a training session in Florida. Vitillo appears to have suggested that Joseph had not sought the proper approvals before requesting time to attend the training. Joseph replied to the charge as follows:

> With all due respect, you not having a "response" from [two union officials] is truly irrelevant to my request for official time to attend NTEU's Fall training.
>
> .    .    .    .    .

ber 24, 2004 ("Compl."); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated April 25, 2005 ("Def.Mem."); Declaration of Lisa M. Flynn, dated April 25, 2005 ("Flynn Decl."); Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amendment Violation Complaint, dated May 30, 2005 ("Joseph Opp. Mem."); and Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, dated June 14, 2005 ("Def. Reply Mem.").

Except where specifically referenced, no further citation to these sources will be made.

**5.** "PODs" stands for the Program Oriented Data System, the FDA's time-tracking system.

**6.** DHHS was granted summary judgment in Joseph's Title VII action by Memorandum and Order dated March 22, 2005. *See Joseph v. Thompson*, No. 95–CV–4898 (E.D.N.Y. Mar. 22, 2005), attached as Ex. B to Flynn Decl.

When I made the request for official time, I did provide information that gave sufficient data about what the Fall training "was about." If for some reason you needed more information, you could have made the request directly to me. It is certainly interesting that you did not.... [I]t is reminiscent of a sort of Black Codes, whereby some persons in the society had to receive the permission of others to engage in limited free speech, limited movement, and limited travel, and also to be monitored closely while engaged in such activities, with "papers" at the ready to provide to any law enforcement personnel (official or quasi) and certain groups of citizens on demand.

(September e-mail, attached as Ex. 3 to Compl., at 1.)

Vitillo responded to these e-mailed allegations with the Counseling Memo, which was copied to Wanda Eng, Director of the FDA's Investigations Branch, and Jerome Woyshner ("Woyshner"), who is described in Joseph's complaint as the New York District Director of the FDA. The Counseling Memo began by stating it was intended to address Joseph's "unprofessional behavior towards [Vitillo] in [the August and September] e-mails." (Counseling Memo, attached as Ex. 1 to Compl., at 1.) The Counseling Memo went on to state:

In both [e-mails], the tone appears to be sarcastic and disrespectful. Despite the preface to the September 13, 2004 e-mail, "With all due respect," your comments and tone are anything but. Since we both spend a significant amount of time in the workplace, it is essential that it be a respectful workplace. Disrespectful conduct serves no useful purpose and it often interferes with the work being conducted.

Additionally, any future comments and/or complaints about the workplace should follow the chain of command and you should not assume that you can indiscriminately forward e-mails directly to Dr. Crawford.

We must strive to maintain a professional, courteous attitude and be considerate of others in the workplace. I am advising you that your unprofessional behavior towards me is unacceptable and cannot be tolerated.

(Id.)

The memo also warned Joseph that if his conduct did not improve, disciplinary action, including termination from the FDA, could result. According to an EEO Counselor, Woyshner informed her that "the counseling memo was not an official reprimand and therefore was not made part of [Joseph's] official personnel file." (EEO Counselor's Report, dated April 22, 2004, attached as Ex. 1 to Joseph Opp. Mem. ("Counselor's Report"), at 6.)

Joseph filed his complaint on November 24, 2004. In the complaint, Joseph alleged that the issuance of the Counseling Memo gave rise to three causes of action: (1) a violation of Joseph's First Amendment rights; (2) a violation of Title VII; and (3) a violation of the FLMRS. Specifically with regard to the First Amendment claim, Joseph alleges that Defendants, by sending him the Counseling Memo, had taken an action that "revoked, restricted and chilled" his First Amendment right to free speech by limiting his ability to comment on racial discrimination at the FDA and DHHS. (Compl. at 26.)

Joseph has also begun two separate administrative proceedings related to the Counseling Memo. (See Flynn Decl. ¶¶ 5–6.) On November 26, 2004, Joseph filed an informal complaint with the EEOC. An EEO Counselor conducted an investigation, initiated because Joseph "believe[d] the Counseling Memo was issued in retaliation for his prior EEO complaints and for

his ongoing opposition to unlawful discriminatory policies and practices. [Joseph] also believe[d] the Counseling Memo was issued because he is a black male," and concluded that the matter could not be resolved informally. (Counselor's Report at 5–6.) Joseph states that he filed a formal EEO complaint on May 24, 2005. (Joseph Opp. Mem. at 4.) In addition, Joseph has submitted a notice of intent to file an unfair labor practice complaint pursuant to Article 60 of the Collective Bargaining Agreement between the FDA and the NTEU. (*See* Flynn Decl. Ex. A.)

Even though Joseph's complaint alleges that the Counseling Memo gives rise three causes of action (*see* Compl. at 2), he has expressly limited the instant suit to claims allegedly arising under the First Amendment. In his opposition brief, Joseph states that **"SIMPLY PUT, THE LEGAL QUESTION BEFORE THE COURT IS: DID THE AGENCY [AND THE NAMED AGENCY OFFICIALS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES] BY THEIR INSTANT ACTION AGAINST PLAINTIFF VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS?"** (Joseph Opp. Mem. at 4) (emphasis and bracketed text in original). He also asserts that "his complaint is a complaint contending violation of his First Amendment rights. It is not a Title VII complaint alleging employment discrimination/retaliation.... A Title VII claim of employment discrimination is not before the Court at this time." (*Id.*) Further, Joseph states that he "has not filed an unfair labor practice or any other claims with the Court for violations of the FLMRS." (*Id.* at 5.) Because Joseph declares that the only cause of action raised in his suit relates to an alleged violation of his First Amendment rights, the Court looks only at whether Joseph's First Amendment allegations may survive a motion to dismiss.[7]

## II. DISCUSSION

### A. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court "tak[es] as true the material facts alleged in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Dotson*, 398 F.3d at 162 (citing *Desiano v. Warner–Lambert Co.*, 326 F.3d 339, 347 (2d Cir.2003)). However, "where pleadings are legally defective, dismissal is warranted without regard to the factual merits of a plaintiff's underlying claim." *Id.* at 159 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).[8]

7. Even if Joseph did seek to assert Title VII and FLMRS claims, he could not pursue them in federal court because they have not yet been exhausted. *See Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir.1996) ("Under Title VII, a litigant must exhaust available administrative remedies in a timely fashion."); *Brito v. Diamond*, 796 F.Supp. 754, 758 (S.D.N.Y. 1992) (explaining that an FLMRS claim "comes within the exclusive jurisdiction of the FLRA[, the federal agency responsible for federal labor-management relations,] and must be asserted before that agency").

8. Several courts in this District has found that the preclusion of judicial remedies achieved by the CSRA's administrative scheme deprives the Court of subject matter jurisdiction over a federal employee's suit seeking remedies not available under the CSRA. *See, e.g., Hightower v. United States*, 205 F.Supp.2d 146, 155–56 (S.D.N.Y.2002). But the District Court's decision affirmed by the Second Circuit in *Dotson*, after finding that it had subject matter jurisdiction over the action, dismissed the employee's suit under Rule 12(b)(6). *See Dotson v. Griesa*, No. 99 Civ. 11713(RCC), 2001 WL 293962 (S.D.N.Y. Mar. 26, 2001), *aff'd, Dotson*, 398 F.3d at 156. The Second Circuit explicitly approved of this disposition of the action. *See Dotson*, 398 F.3d at 159. Consequently, the Court will analyze whether Joseph's First Amendment cause of action is precluded by the CSRA under the standards

## B. DISCUSSION

The Court begins its analysis of Joseph's claims by assuming, for the purposes of argument, that Joseph asserts an injury that would not be precluded by Title VII,[9] and that is actionable under the First Amendment.[10] It is extremely doubtful that Joseph could satisfy these conditions. But even if he could, it is clear from *Dotson* that any First Amendment claim that he would otherwise be able to assert would be precluded by the CSRA.[11]

In *Dotson*, the Second Circuit addressed a federal probation officer's efforts to pursue constitutional claims in federal court. The employee, Allen Dotson ("Dotson") had been terminated, and had unsuccessfully pursued at least some of the adminis-

applicable to Rule 12(b)(6) motions to dismiss.

9. The Government alleges that Joseph's First Amendment cause of action is precluded by Title VII because, according to the Government, Joseph may pursue—and, in fact, is pursuing—administrative remedies available to him under Title VII arising out of the issuance of the Counseling Memo. The Government relies on *Brown v. Gen. Serv. Admin.,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), which states that Title VII provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," in support of this argument. But courts have held that Title VII precludes other causes of action "only when the federal employee is challenging action directly and singularly related to discrimination in the terms and conditions of his or her employment." *Lewis v. Snow,* No. 01 Civ. 7785, 2003 WL 22077457, at *10 (S.D.N.Y. Sept. 8, 2003) (quoting *Rochon v. Fed. Bureau of Investigation,* 691 F.Supp. 1548, 1555 (D.D.C.1988)), and "does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin.'" *Id.* (quoting *Rottman v. U.S. Coast Guard Acad.,* 630 F.Supp. 1123, 1125 (D.Conn.1986)). Thus, at minimum, a plaintiff's claims would not be barred by Title VII if they are predicated on injuries that could not be redressed by Title VII.

While it appears that much of Joseph's speech that led to the Counseling Memo concerned alleged discrimination against him, other aspects of the speech concerned Joseph's working conditions and relationships with his supervisors. Claims grounded in speech on subjects other than discrimination could not be actionable under, or precluded by, Title VII. Consequently, even if the portion of Joseph's First Amendment allegations that is based on complaints of discrimination were precluded by Title VII, some portion of the allegations would remain unprecluded by the statute.

10. Joseph's speech does not appear to be protected by the First Amendment. While the Government did not raise, and the parties did not brief, this basis for dismissing Joseph's complaint, the Second Circuit reaffirmed in *Tiltti v. Weise,* 155 F.3d 596, 603 (2d Cir. 1998), that "expressing dissatisfaction with working conditions is not, by itself, speech on matters of public concern" that is entitled to First Amendment protection. The Court cannot see how Joseph's e-mails were anything other than expressions of "dissatisfaction with working conditions": they concerned his performance appraisal and his request for official time, rather than any matter of public concern (other than perhaps his reiteration of complaints concerning alleged discrimination in the workplace, which would be exclusively actionable under Title VII if it served as the basis for the Counseling Memo); they were sent to his employer via private e-mail, rather than spoken or posted in any public forum; and they expressed no "mission to protect the public welfare," *id.* (quoting *Ezekwo v. New York City Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991)), that might otherwise entitle the e-mails to First Amendment protection.

11. The Court does not venture here to explore whether Joseph may have alternative avenues for obtaining additional administrative or federal judicial review of his alleged injuries were he to combine his First Amendment allegation with a claim of discrimination in the administrative proceedings he has already instituted, or if he merely continued pursuing the administrative remedies available to him under Title VII or the FLMRS.

trative review procedures available to him to seek reinstatement. *See Dotson,* 398 F.3d at 161–62. Dotson then sought damages and equitable relief against several judges of this District and employees of the Probation Office of the United States District Court for the Southern District of New York ("Probation Office"). Dotson argued that he could maintain a cause of action for damages arising out of the defendants' allegedly unconstitutional conduct towards him under *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that he was also able to pursue equitable relief against the officials on constitutional grounds.

The Circuit Court rejected these arguments, concluding that the comprehensive remedial scheme established by the CSRA precluded Dotson's constitutional claims. *See id.* at 160 ("Precisely because the CSRA reflects a detailed and comprehensive system for dealing with federal employment concerns, federal courts will generally not attempt to supplement the relief afforded by that statute through other actions, including those implied under *Bivens* or derived from equity."). It reached this conclusion even though it found that Dotson was not entitled to any of the administrative remedies provided by the CSRA itself to many other federal employees. *See id.* The Circuit Court relied on a line of Supreme Court cases, including *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), that sharply restricted federal employees' ability to pursue judicial remedies for constitutional injuries arising out of their employment relationship with the federal government.

█ Joseph cannot distinguish his First Amendment claims against Defendants

from the claims that were found to be precluded by the CSRA in *Dotson.* Joseph argues that he may not pursue any remedies under the CSRA due to the nature of his complaint and the alleged injury he suffered. But this assertion, in addition to being immaterial to the Court's disposition of his claim, is incorrect. Unlike the plaintiff in *Dotson,* Joseph is covered by the CSRA and may pursue remedies available under that statute to address the alleged violation of his First Amendment rights. As described in *Dotson,* Chapter 23 of the CSRA "establishes the principles of the merit system of employment." *Dotson,* 398 F.3d at 163 (quoting *Fausto,* 484 U.S. at 446, 108 S.Ct. 668). The statute, and specifically 5 U.S.C. § 2301, which lists merit system principles, requires that all employees be treated "with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(1). It also states that supervisory employees shall not "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12). Considering these two sections of Chapter 23 of the CSRA together, courts have concluded "it is a 'prohibited personnel practice' to take a personnel action that unconstitutionally burdens an employee's speech." *Jarvis v. Cardillo,* No. 98 Civ. 5793, 1999 WL 187205, at *3 (S.D.N.Y. April 6, 1999); *see also Hightower v. United States,* 205 F.Supp.2d 146, 156 (S.D.N.Y.2002) ("An employee's 'employment related claims alleging constitutional violations are "prohibited personnel actions" within the meaning of the CSRA.' ") (quoting *Black v. Reno,* No. 99 Civ. 2704, 2000 WL 37991, at *8 (S.D.N.Y. Jan. 18, 2000)).

The CSRA provides for an administrative procedure that Joseph may use to

pursue his claims of unconstitutional conduct. Chapter 23 of the CSRA provides that an employee who alleges he or she was subjected to a "prohibited personnel practice" may file a complaint with the Office of Special Counsel ("OSC"). *See Tiltti*, 155 F.3d at 601; *Jarvis*, 1999 WL 187205, at *4. The OSC is empowered to investigate the allegation and determine "whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken," 5 U.S.C. § 1214(a)(1)(A), may request that the agency take corrective action, and if no such action is taken, may petition the Merit Systems Protection Board ("MSPB") to require the agency to take corrective action. *See Tiltti*, 155 F.3d at 601.

While the CSRA does not provide for any substantive judicial review of the OSC's resolution of a federal employee's complaint, *see id.* (noting that "[j]udicial review of an [Office of Special Counsel] decision is limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry on which to base its disposition of an employee's petition") (quoting *Cutts v. Fowler*, 692 F.2d 138, 140 (D.C.Cir.1982)), "[t]he unavailability of judicial review under the CSRA for certain employment grievances cannot be 'inadvertent' in light of the Supreme Court's holding in *United States v. Fausto.*" *Dotson*, 398 F.3d at 167. Consequently, Joseph cannot argue that the absence of judicial review provided by the CSRA's administrative scheme entitles him to a federal cause of action.

■ As *Dotson* concluded, the CSRA precludes a federal employee from pursuing judicial remedies for allegedly unconstitutional conduct that are not expressly provided by the statute, regardless of the type of remedy sought by the federal employee. *See id.* at 176 (concluding that "federal employees covered by the CSRA[ ] are precluded from pursuing *Bivens* damages actions for adverse employment decisions"); *id.* at 182 (concluding "that Congress has clearly expressed its intent to preclude federal civil service personnel . . . from attempting to supplement statutory remedies . . . with separate suits at equity raising constitutional challenges to adverse employment actions.").[12] The CSRA thus operates to preclude Joseph from pursuing his First Amendment claim in federal court.

## III. *ORDER*

For the reasons discussed above, it is hereby:

---

12. In light of the Second Circuit's decision in *Dotson*, Joseph's reliance on *Velikonja v. Mueller*, 315 F.Supp.2d 66 (D.D.C.2004), which allowed a federal employee's First Amendment claim to proceed against her employer, is misplaced. *Dotson* noted that the District of Columbia Circuit is one of two circuit courts that have not found the CSRA to preclude all federal judicial remedies other than those explicitly authorized by the statute. *See Dotson*, 398 F.3d at 179–80 (citing, *inter alia, Hubbard v. EPA*, 809 F.2d 1, 11 (D.C.Cir. 1986)). The Second Circuit, however, explicitly disagreed with this interpretation of the CSRA, instead "aligning [itself] with those circuits that have held that employees covered by the CSRA . . . may not sue in equity for reinstatement of employment, even when they present constitutional challenges to their termination." *Id.* at 180. *Velikonja*, which relies on the caselaw that the Second Circuit has rejected, thus cannot assist Joseph in his effort to maintain a First Amendment action in this Court.

Nor is Joseph's reliance on cases addressing First Amendment claims made by non-federal employees of assistance to him. Non-federal employees are not subject to the procedures established by Congress in the CSRA and related statutes governing the relationship between the federal government and its employees. The CSRA preclusion doctrine announced in *Dotson* thus does not apply to those cases.

**ORDERED** that the motion of the Defendants to dismiss the complaint of Gregson Joseph ("Joseph") pursuant to Fed. R.Civ.P. 12(b)(6) is hereby GRANTED.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**